SMITH ET AL v. GRIMES ET AL.

1. **Vendor and Vendee**: FRAUDULENT CONVEYANCE: POSSESSION. While the continued possession of land by the vendor for a period of years after the sale, without payment of rent or the existence of a lease, is not evidence of fraud *per se*, yet it may be considered with other circumstances as evidence of *mala fides* in the transaction.

2. ——: ——: PRICE. The price alleged to have been paid for the land is a proper circumstance to be considered in determining the character of the transaction.

3. ——: ——: CONSIDERATION. The execution by the vendor to the purchaser of the land of a chattel mortgage and an assignment of his interest in his father's estate without consideration, while he was insol-

vent or large debts were outstanding against him, will be presumed to have been intended to protect his property from his creditors.

4. **Evidence:** CREDIBILITY OF. Notwithstanding witnesses may be discredited by impeaching evidence, their testimony cannot be wholly disregarded when it is sustained by the corroborating evidence of circumstances and of other witnesses.

5. **Conveyance:** ASSIGNMENT OF LIENS: FRAUD. Where the consideration for a conveyance held to be fraudulent was a certain sum in money and the discharge of certain incumbrances, the fraud in the conveyance will not vitiate the assignment of the liens to the vendee in whose hands they will be valid.

6. **Lien:** PRIORITY OF. The holder of a lien upon two funds, one of which is encumbered to another creditor, must first exhaust the fund upon which he alone has a lien.

*Appeal from Des Moines District Court.*

FRIDAY, JUNE 9.

ACTION in chancery to subject certain lands in Des Moines county to a judgment held by plaintiff, Smith, against John Pierson, one of the defendants. The legal title to the lands is held by another defendant, David W. Grimes. Smith charges, in the petition, that the deed to Grimes was made by Pierson with the fraudulent intention on the part of both to defeat him and other creditors of Pierson in the collection of their claims, all of which are in judgments, and that the lands are held, under that conveyance, in secret trust for the benefit of Pierson. The other creditors of Pierson intervened, uniting in the averments made in Smith's petition and asking like relief, and were made plaintiffs. Pierson's wife was joined as a defendant. A decree was rendered upon the final hearing, subjecting the land to the judgments of the plaintiffs. Defendants appeal. The facts of the case appear in the opinion.

*P. Henry Smyth*, for appellant, Grimes.

Inadequacy of price does not show fraud. (Hill on Trustees, p. 152; *Noel v. Noel*, 1 Iowa, 425.) In law the value of a thing is the price it will bring. (Perry's Polit. Economy, p. 66.) While parol evidence is admissible to show fraud, or that a

deed absolute is a mortgage, yet it is not conclusive if not strong, irrefragable evidence, or if it be contradicted. (Hill on Trustees, p. 265; *Dwight v. Pomeroy*, 17 Mass., 328.) Parol evidence to establish a trust should be received with great caution. (*Noel v. Noel, supra.*) The plaintiff seeking to overturn the legal title has the burden, and the proof should be clear, satisfactory and conclusive. (*Parker v. Pierce*, 16 Iowa, 231; *Epps v. Dickerson*, 35 Id., 305.) The law never presumes fraud; if the case is consistent with fair dealing, the charge of fraud fails. (Kerr on Fraud, p. 384.) The party alleging fraud must show such a state of facts as is inconsistent with honesty of purpose. (*Schofield v. Blind*, 33 Iowa, 175; *Lyman v. Cessford*, 15 Id., 229; *Drummond v. Couse*, 39 Id., 442.) Possession by the vendor after sale is neither conclusive nor presumptive evidence of fraud. (*Suiter v. Turner*, 10 Iowa, 522.)

*Luke Palmer, Jr.*, for appellant, John Pierson, Jr.,

Cited *Given v. Campbell*, 20 Iowa, 79; *Tunis v. Withrow*, 10 Id., 308; *Kitsmiller v. Kitchen*, 24 Id., 163; Code, § 2870.

*Hall & Baldwin*, for appellee, Smith.

Possession of land and taking profits after an absolute conveyance is evidence of fraud, unless such possession be consistent with the objects of the deed, or the character of it be open and explicitly understood. (*Hildreth v. Sands*, 2 Johns. Ch., 45; *Codwise v. Sands*, 4 Johns. Ch., 586.) On a question of fraud in the sale of property, the declarations as well as the acts of the parties are competent evidence. (*Benham v. Cary*, 11 Wend., 83; *Crary v. Sprague*, 12 Id., 44; *Nudd v. Burrows*, Chic. Leg. News, Dec. 18, 1875, p. 101.) Evidence of a connection between the various transactions, showing that a common purpose existed in them all, and that they are parts of one fraudulent scheme, was admissible. (*Jordan v. Osgood*, 109 Mass., 457; *Lynde v. McGregor*, 13 Allen, 172; *Taylor v. Robbins*, 15 Gray, 590; *Rowley v. Bigelow*, 12 Pick., 307; *Allison v. Mathieu*, 3 John., 233.)

The lien of the judgments purchased by defendant having expired, the court could not renew or revive them. (*Dene-gree v. Haun*, 13 Iowa, 240.) The creditor who has been a party to a fraudulent conveyance, to hinder and defraud other creditors, cannot come in with them for a distributive share of the property. (*Wilson v. Horr*, 15 Iowa, 490; *Bard v. Dunlap*, 1 Johns. Ch., 478; *Bean v. Smith*, 2 Mason, 252.) Equity will not keep alive separate and valid liens and prevent their merging in the legal title to protect a fraudulent grantee. (*Boreland v. Walker*, 7 Ala., 269; *White v. Graves*, 7 J. J. Marsh, 523; *Weedon v. Hawes*, 10 Conn., 50.) If the mortgagee permits the mortgagor to use the mortgage to keep off other creditors, he will be held accountable for the profits. (1 Hill. on Mort., 465.)

*C. H. Phelps*, for appellee, David Pierson,

Cited *Wilson v. Parish*, 34 Iowa, 367; *Callanan v. Shaw*, 24 Id., 446.

BECK, J.—The only questions presented in this case, upon which there is any controversy, involve the validity of the conveyance of the lands from Pierson to Grimes, which are sought to be subjected to plaintiff's judgments. With one. exception, no objection is made to the judgments or the claim upon which they are based. This matter will be considered in its proper order. If the deed from Pierson to Grimes was made, as charged by plaintiffs, to cover and protect the property conveyed from the judgments against Pierson, and Grimes holds it under a secret trust for that purpose, the plaintiffs are entitled to the relief prayed for in their respective petitions. The duty which we are required first to discharge is the determination of the question here presented. It rests wholly upon the consideration of the facts of the case, and we believe that a conclusion may be reached without the announcement of a single proposition of law about which there can be a dispute. . We cannot undertake the discussion of the evidence, or even a statement in full of its purport. Counsel occupy more than one hundred printed pages in the consider-

ation of the evidence.   They cannot be charged with repetition
or the discussion of facts not in the case.   Indeed, if they fail
in any respect, it is in omitting many thoughts and argu-
ments that are not without weight.   It will be at once seen
that an attempt to discuss the evidence in a manner that would
be at all satisfactory to ourselves or profitable to those inter-
ested in the case, would demand an opinion of an unusual
length.   If we should accomplish its preparation, it would be
without interest or profit to the profession, and, of course, be
satisfactory to the successful party only.   We will, therefore,
content ourselves with stating the leading facts in the case,
and the conclusions we reach thereon, which control our
decision.

At the date of the execution of the deed in question, Feb-
ruary 18, 1863, John Pierson, the defendant, was, if not
insolvent, very largely indebted, probably to nearly the extent
of the value of his property.   On the day prior to the date of
the deed, the judgment held by plaintiff had been rendered
against him for the sum of $4,898.38.   The suit wherein the
judgment was rendered had been pending for some time; at
least it is made to appear that a continuance at a prior term
had been had at the instance of Pierson.   He was indebted in
another sum still larger to the same party who recovered the
judgment.   There were judgments, mortgages and claims in
other forms against him.   Within a few days after the ren-
dition of plaintiff Smith's judgment, which was in the
District Court of Mahaska county, a transcript thereof was
filed in Des Moines county, where Pierson lived, occupying
the land in controversy as a farm.   The consideration expressed
in the deed is $9,000; it contains the usual covenants of war-
ranty.   There were a mortgage and judgment liens upon the
land in controversy amounting to $11,332.12.   No mention is
made of these incumbrances in the deed.   Pierson continued
in the possession of the farm up to the day of the taking of
the evidence in this case.   No lease existed between him and
Grimes, and he paid no rent.   The buildings and fences were
kept in repair, and some improvements were made upon the
land by Pierson.   Portions of the property, including a house

not occupied by him, were rented, and the rent collected by him. No change whatever was made in the possession or management of the farm after the execution of the deed to Grimes. Negotiations were made with Pierson for the purchase of portions of the land, though no sales were effected. Grimes is not shown to have exercised any control whatever over the land. Parties applying to him in regard to matters pertaining to roads and the like, which affected the land, were referred by him to Pierson. After the conveyance, Pierson executed to plaintiff, Smith, a chattel mortgage upon the horses and cattle used and kept upon the farm. Grimes gave his note subsequently to Smith for $1700, the amount secured by this chattel mortgage, either to discharge it or to purchase the property under it. The property was left in the possession of Pierson. Some of the horses were sold by Grimes, but others were never taken from Pierson's possession, and he never paid Grimes for them. Pierson executed to Grimes a chattel mortgage covering certain property he has in Henry county, and an assignment of his interest in the estate of his father, which remained unsettled. Grimes denies having any notice of the execution or existence of these instruments. There is, however, evidence that a suit was prosecuted in his name to recover possession of a part of the property covered by the chattel mortgage. There is other evidence that he claimed the property, or a part of it, covered by the instrument. The deed under which Grimes claims the lands, conveyed Pierson's homestead. It was unincumbered, except by a mortgage to Coolbaugh & Brooks for $8,544.61, which, including the homestead, covered two hundred and twenty-six acres of land. All the lands involved in this action, being 318 acres, lie adjacent to, or very near the city of Burlington. Prior to his alleged purchase, Grimes made or caused to be made no investigations into the title of and incumbrances resting upon the land.

The foregoing are the undisputed facts of the case, so far as it is deemed necessary to state them. Upon other points of the case there is great and irreconcileable conflict in the evidence. The question of the value of the lands at the time

of the execution of the deed by Pierson becomes important. Plaintiff's witnesses, all citizens of Burlington and vicinity at the time, and some of them dealers in, and all, we believe, owners of real estate, estimate the value of the property at the time it was conveyed to Grimes, to have been at least $100 per acre. No one of the witnesses gives a value less than this, while two think $150 was a fair estimate. We may safely put down the valuation, as established by plaintiff's witnesses, at $100 per acre. Defendant's witnesses estimate the value of the land much lower; all except three, we believe, fix the price, at the time in question, at $50 per acre; these three think it was worth no more than $30 or $35 per acre. We may place the value, as fixed by defendant's witnesses, at $50 per acre.

Grimes and Pierson both testify that the sale of the lands was *bona fide*. Pierson's wife corroborates this testimony, which has support, to some extent, in the evidence of other witnesses. Two witnesses at least testify to direct and explicit admissions made by Grimes to the effect that the deed was not intended as an absolute sale, but as security for an indebtedness from Pierson to Grimes, and for the protection of Pierson. The credibility of these witnesses is assailed by evidence of other witnesses, who testify to their bad character for truth; their testimony is supported by others, who declare they are entitled to full credit.

Plaintiffs introduce other witnesses who state conversations and admissions of Grimes, tending to show that the sale was not *bona fide* and absolute.

Grimes and Pierson unite in stating that the consideration for the sale of the lands was an indebtedness of $9,000 and over, from the latter to the former, the sum named in the deed, and in addition thereto, Grimes assumed to discharge incumbrances by judgments, and Coolbaugh & Brooks' mortgage, all amounting to $11,332.12. The real consideration thus paid for the land was $20,453.06.

Many other facts, about which there exists no dispute, and other matters whereon there is conflict of evidence, are presented in the record. As they are not necessary to support

the conclusion reached in this opinion, we do not refer to them.

We conclude upon the whole testimony that the purchase of the land by Grimes was not in good faith, and that he holds it subject to a secret trust for the benefit of Pierson. We are brought to this conclusion mainly by these considerations.

I.   There has been no change in the possession and control of the property, and Pierson has occupied it without the payment of rent under any certain contract. This occupation has existed for ten years or more. While this possession is not *per se* evidence of fraud in the transaction, it may be considered in connection with other circumstances, and its force and effect as evidence of *mala fides* depend upon the accompanying facts of the case. It is certainly an unusual and unaccountable circumstance, in the sale of these lands. Pierson, in defendants' view of the case, is hopelessly insolvent. Grimes permits him to occupy and control a large and valuable estate for more than ten years, without payment of rent, or the existence of a lease or any certain contract between them pertaining to the possession of the land. The possession by Pierson is not accounted for on the grounds of affection, gratitude, or any legal obligation. The parties are not of kin; no prior relations which would account for the fact are shown to have existed. It will not do to explain it on the ground of general good feeling and kindness possessed by Grimes. We have never met with a case wherein so large and long protracted generosity was exercised.

II.   The lands amount to 318 acres. Their value in 1863, when the deed was made, at the price established by defendants' evidence, $50 per acre, amounts to $15,900. According to defendants' theory, Pierson owed Grimes more than $9,000. He paid incumbrances amounting to $11,332. By the purchase he realizes only $4,568 on his debt of $9,000. This is an unusual transaction except in the view that the creditor regarded the debtor as utterly insolvent, and that nothing better could be done to collect the debt. But after sacrificing more than half the debt, and making an

investment of more than $11,000 to collect the other half, it is indeed unaccountable that Grimes should permit Pierson to occupy the lands thus acquired, for more than ten years, in the manner described.

III. But under plaintiffs' evidence the lands were worth $31,800. If this evidence be correct, Grimes acquired the land at a price greatly inadequate—at about two-thirds their value. This fact may be properly considered in determining the character of the sale. *Wilson v. Patrick*, 34 Iowa, 362.

IV. There was an unusual and unaccountable confidence existing between Grimes and Pierson, witnessed by the

3. ___ : ___.  chattel mortgage executed by the latter, and his
chattel mort-
gage: consid- assignment of the interest in his father's estate,
eration.       confessedly without consideration, and not to be explained except on the hypothesis that they were intended to protect the property from Pierson's creditors. The purchase of the horses held by Smith under the other chattel mortgage, and the possession and use thereof enjoyed by Pierson, show the same relation.

V. The mortgage and judgment liens, when paid by Grimes, were not satisfied, but assigned to him. This is not in accord with the theory of defendants. Under the arrangement as claimed by defendants, Grimes could not hold these liens, but should have satisfied them.

VI. A prudent man would not have made a *bona fide* purchase, requiring so large an investment, from one known to him to be either insolvent or at least largely indebted, without making due examination of the proper records for liens upon the lands.

VII. The deed to Grimes covered Pierson's homestead. There was no lien upon it except Coolbaugh & Brooks' mortgage for $8,544.61, which covered 186 acres in addition to the homestead. This land, according to defendants' evidence, was worth $50 an acre. The land covered by the mortgage, not including the homestead (186 acres), was worth $9,300, nearly $1,000 more than the amount secured by the mortgage. Nothing could have induced Pierson to convey his homestead to Grimes except a desire to pay his debts, for he could have

held it free from all claims except the mortgage, and the proceeds of the other lands covered by the incumbrance would have been sufficient to discharge it. But, surely, we can give Pierson credit for no such motive, in view of the facts disclosed by the record, which shows claims against him to the amount of many thousands of dollars, that he exhibited no anxiety to satisfy. But, it is said, he had a right to prefer Grimes and other creditors. But the trouble is that he exercised this preference, as shown by plaintiffs' evidence, by paying more than he owed them, and, in the view of the facts as insisted upon by defendants, by surrendering his homestead with his other lands, without paying, thereby, half of all his debts. Transactions of this kind never occur between prudent and intelligent men acting in good faith. Surely, men showing the disposition which Pierson exhibits in this record, to delay the payment of his creditors, never do such things.

VIII. There is direct and positive evidence of admissions by Grimes to the effect that the deed to him was not intended **4. EVIDENCE: credibility of.** to deprive Pierson of all interest in the property, and proof of conversations strongly tending to the same effect. Two of the witnesses are more or less discredited by impeaching evidence. While they are sustained by evidence of their good character, it is not to be denied that their credibility is affected. But we cannot say that it is wholly destroyed. Certainly, in view of this corroborative evidence, we cannot disregard their testimony. *Callanan v. Shaw*, 24 Iowa, 446; *Wilson v. Patrick*, 34 Id., 367.

Considering all these points, and others presented by the testimony, we are brought to the satisfactory conclusion that the deed from Pierson to Grimes cannot be sustained against the creditors of the latter, except as to the homestead.

IX. We must now determine the relief to be granted the several parties.

The plaintiffs and intervenors have duly established their liens and claims. No objection is made to the decree of the **5. CONVEYANCE: assignment of liens: fraud.** District Court settling the amounts of these claims, except as to that of David Pierson, which we will hereafter consider. The decree as to these matters will be affirmed.

The mortgage and judgments assigned to Grimes are liens upon the lands, prior to the claims of the other parties. The fact that the deed to him cannot be supported against Pierson's creditors, does not affect his right to their liens. The assignment thereof must be regarded as valid. · It is true we found the deed to be fraudulent as to creditors, but we are not required to punish the fraud by setting aside these assignments and holding the liens to have been paid, which is contrary to the theory we adopt in deciding the case. We are required to determine the rights of the parties, not to administer punitive justice.

X. But, it is said, as to the judgments assigned to Grimes, ten years having expired since their rendition, they are no longer liens. The same thing may be said of plaintiff Smith's judgment. But all these were liens when this suit was commenced. The rights of parties must be determined as they existed at that time.

XI. Pierson's homestead was not subject to the judgments or claims of the plaintiffs and intervenors, or to any one of them. As they could not, at any time, have reached the homestead for the satisfaction of their claims, the deed thereof to Pierson did not deprive them of any right and was not, therefore, fraudulent.

6. LIEN: priority of.

The Coolbaugh & Brooks mortgage, as has been said, covers the property formerly occupied by Pierson as a homestead. The other judgments and claims are upon the other property alone. Under the rule of equity the mortgage must be enforced against the homestead land first; any unsatisfied balance may be charged against the other lands covered thereby.

The rule referred to is this: The holder of a lien upon two funds, one of which is incumbered to another creditor, must first exhaust the fund upon which he alone has a lien. ·

The judgments assigned to Grimes will be enforced against the other lands as liens prior to plaintiffs' claims and judgments. The land occupied by Pierson does not, in the hands of Grimes, possess the identical character of the homestead when occupied by Pierson. We use the term homestead in

connection with it as a description of the land, not as indicating its exemption from debts in the hands of Grimes.

XII. The court below rendered judgment in favor of intervenor David Pierson against John Pierson for defendant, and provided for the enforcement thereof, and satisfaction out of the proceeds of the sale of the lands. Defendant Pierson insists, in this court, that as he was not served with process requiring him to answer the petition of David Pierson, and that, as he did not appear thereto, the judgment is void.

The cause is tried here upon the abstract. This shows that John Pierson made default, at least the decree so recites. This finding of the court will be conclusive upon us until sufficiently contradicted by other parts of the record, and it is shown that the defendant named had not been, by proper process, brought into court. Nothing contradicting this adjudication is presented in the abstract.

A decree may be rendered in this court in accord with the foregoing opinion, or, at plaintiffs' option, the case may be remanded to the District Court for that purpose. It will be observed that, as to the relief given defendant Grimes, our opinion modifies the decree of the court below.

That the provisions of the decree to be rendered may not be mistaken by counsel who shall prepare it, we will give the following additional directions for their guidance:

1. The findings of the court below as to the judgment and claims of all the parties, including Grimes, are affirmed. The judgments and the order of their payments are correctly settled in the decree of the District Court, except as to liens held by Grimes under the Coolbaugh & Brooks mortgage.

2. The Coolbaugh & Brooks mortgage will be satisfied out of the proceeds of the homestead land. Any balance due thereon after the proceeds of that property are exhausted, will be made up from the sale of the other lands. Should a balance remain after paying this mortgage from the proceeds of the homestead, it will be paid to Grimes and not applied to the other claims.

3. The decree may provide that Grimes may pay off all judgments against the lands. He will then hold them free

from the claims of all, except creditors not parties to this suit. The homestead land need not be sold if Grimes will discharge the lien of the Coolbaugh & Brooks mortgage upon the other lands.

4. If any balance should remain from the proceeds of all the lands after the payment of all judgments and liens provided for in the decree, it will be paid to Grimes.

It will be observed that, as between Pierson and Grimes, we do not declare the deed void. Neither ask such relief, even if they would be entitled to it. After the payment of the debts against Pierson which are, in this action, declared to be liens upon the lands, the property, or its proceeds remaining, must be regarded as belonging to defendant Grimes, subject, of course, to the rights of others who are not parties to this suit.

Other provisions of the decree rendered in the court below, not inconsistent with this opinion, will be followed in preparing the new decree.

MODIFIED AND AFFIRMED.