MARK HOLMES, Appellant, v. JACOB RIVERS.

**Exchange of properties:** EVIDENCE OF VALUE. Where there has been
1   an agreed valuation of properties, the subject of exchange, evidence of the market value of the same should be excluded as immaterial.

**Evidence:** HARMLESS ERROR. Error in the rejection of evidence is
2   rendered harmless by its subsequent admission.

**Same:** PREJUDICE. Where a witness, as in this case, had been per-

mitted on direct examination to state the amount of insurance upon certain property, it was not prejudicial for him on cross examination to describe the different policies, although the policies themselves were the best evidence.

**Same:** EXAMINATION OF WITNESSES. In this action for damages on the ground of defendant's misrepresentation as to the amount he paid for the property exchanged with plaintiff, a witness testified to a certain value, and on cross-examination he was asked whether he knew it had recently been sold at a different price, and if he had known, whether it would have changed his testimony. *Held,* that as the trial occurred some time after such sale, and as there was other evidence showing the sale, the witness should have been allowed to answer.

**Same.** The examination of a witness with reference to his relations to a party in whose behalf he is testifying should be permitted, as tending to show his interest in the suit.

**Same:** HEARSAY. Hearsay evidence should be excluded. Under this rule the evidence in question was incompetent.

**Same:** REBUTTAL EVIDENCE. Competent evidence, occasion for the introduction of which does not arise until its offer on rebuttal, should be then received.

**Instructions:** MARKET VALUE. Where there is no evidence touching the value of property other than its "market value," an instruction on the subject referring to the "actual and fair value" rather than the market value was not misleading.

**Same:** EVIDENCE OF VALUE. The amount of insurance on a building is not direct evidence of its value; but the issuance of policies by an agent, or the allowance of additional insurance, may be inconsistent with his estimate of the value as a witness, and if so, the amount of insurance may be elicited for impeachment purposes.

**False representations:** DAMAGES: NEGLIGENCE OF PARTY DEFRAUDED AS DEFENSE. Where one of the parties to an exchange of properties represented that he paid a stated sum for the property he exchanged, he can not urge in an action for fraud in misrepresenting the amount so paid, that the other party failed to use the available means of detecting the falsity of his statements, or failed to examine the public records for that purpose.

*Appeal from Grinnell Superior Court.*—HON. J. P. LYMAN, Judge.

FRIDAY, FEBRUARY 11, 1910.

ACTION for damages resulted in a verdict for defendant and judgment on a counterclaim. The plaintiff appeals.—*Reversed.*

*Boyd & Bray,* for appellant.

*Will C. Rayburn* and *Jno. T. Scott,* for appellee.

LADD, J.—The plaintiff owned a farm of one hundred and twenty acres, subject to a mortgage of $3,900. The defendant had a house and two lots in Grinnell, subject to two mortgages amounting to $4,000. They exchanged, plaintiff allowing $6,300 for the town property and defendant $9,000 for the farm. In adjusting the difference defendant assigned to plaintiff a note on which $3,500 of the principal was unpaid, and plaintiff executed his note of $852.50 in favor of defendant, payable on demand. The contract was entered into November 11, 1908, and the papers executed early in December following, but possession was not given by either until March, 1909. In this action, begun February 13, 1909, plaintiff alleged that he was without knowledge of the value of property in Grinnell; that in the negotiations defendant had falsely represented that he paid $6,500 for the town property, whereas, it had actually cost him but $4,000; that the representation was made with intent to defraud, and that plaintiff relied thereon, and was induced thereby to make the exchange to his damage in the sum of $2,000. The defendant admitted the exchange as related, but interposed a general denial to other allegations, and in a counterclaim prayed for judgment on the demand note.

I. Plaintiff testified, in substance, that the prices inserted in the written contract were agreed upon as the actual values of the respective properties. Later and after

showing his competency, he was asked the market value of the farm. The answer was excluded on objection as immaterial. The ruling was correct, inasmuch as the value had been agreed upon in the contract. *Fagan v. Hook,* 134 Iowa, 381, 390.

*1. EXCHANGE OF PROPERTIES: evidence of value.*

II. T. H. Buchanan, after testifying to the value of the town property, was asked on cross-examination, "How much insurance have you on this building?" Over objection, he testified that he did not know, but would ascertain. Upon being recalled, he answered that: "Our agency was carrying $500 on that property at the time of this transaction." Subsequently, upon being recalled, he testified in behalf of plaintiff that the entire insurance on the buildings was $4,000, but was not permitted to testify to the amount thereon when defendant purchased the property. If this was error, there was no prejudice, for he subsequently answered a like interrogatory.

*2. EVIDENCE: harmless error.*

On cross-examination he testified, over pertinent objections, that the rule of the company in which he wrote the policy was to limit the amount of insurance to from two-thirds to seven-eighths of the value. Five insurance policies were then shown him, and, over objections as incompetent and not the best evidence, he was allowed to state the names of the several companies and agents, the amount of each policy, its date and time of expiration, and the buildings covered. Of course, the policies were the best evidence concerning these matters, but, as plaintiff had elicited the statement that there was $4,000 of insurance, the details could have added nothing bearing on the issues being tried, and there was no prejudice.

*3. SAME: prejudice.*

III. One Hadley testified in behalf of defendant that the value of the farm was $76.50 per acre. On cross-examination he was asked whether he knew that it had sold within two months at $75 per acre, and if he had known

whether that would have changed his testimony. As
the trial occurred about four months after
the deal and other evidence showed such sale,
the witness should have been allowed to
answer.

4. SAME: exam-
ination of
witnesses.

IV. The agent, Corrough, testified in behalf of de-
fendant that plaintiff had listed his farm with him, and
that he had procured the former to make the deal, reciting
the details. On cross-examination, after say-
ing that he was working for plaintiff, he was
asked whether he was also representing defendant. An ob-
jection as not cross-examination and immaterial was sus-
tained. It should have been overruled. The inquiry was
with reference to his relations with the party in whose be-
half he was testifying and his interest in the suit.

5. SAME.

V. The defendant's wife testified that plaintiff looked
the property over the day before the contract was made.
On cross-examination, in answer to interrogatories testing
her recollection, she said she thought it was
Tuesday before the deal, because on the next
day her husband telephoned that plaintiff was coming in
to make the deal, and wanted to know if she was willing
to let the property go at the price he had suggested. Plain-
tiff's motion to strike what the husband had said as hear-
say was overruled. It should have been sustained.

6. SAME: hear-
say.

VI. Wilson, after qualifying, was allowed, over objec-
tion as not calling 'for the proper measure of damages, to
testify to the value of the house and barn, independent of
the lots. The point is ruled by *Ranck v. City of Cedar
Rapids*, 134 Iowa, 563.

VII. Plaintiff testified in chief that one Turner had
offered him $70 per acre for the farm. Turner denied that
he had done so. Plaintiff in rebuttal, after
saying the offer was not personal, was asked:
(1) How it came to him, (2) whether
he had been so informed, and finally, (3) whether one

7. SAME: rebut-
tal evidence.

Wynes with whom he had listed his farm had told him that Turner had submitted such an offer. These interrogatories were objected to as not calling for evidence in rebuttal, and the objections sustained. Manifestly the occasion for its introduction did not arise prior to Turner's denial, and so the evidence was introduced at the earliest opportunity. The objection should have been overruled.

VIII. In the eleventh instruction the court stated that the measure of damages to be "the difference between the price paid for the property at the time he purchased the same and the actual and fair value of the property at that time." This is criticised for that, as is said, the words "market value" should have been used, instead of "actual and fair value." No evidence had been adduced save of the market value, and for this reason, the jury could have construed no other as intended. See *Jonas v. Noel,* 98 Tenn. 440 (39 S. W. 724, 36 L. R. A. 862); *Sanford v. Peck,* 63 Conn. 486 (27 Atl. 1058). At another trial it will be well to indicate more definitely what is intended by the price paid—whether the price stated in the contract or the land value.

8. INSTRUCTIONS: market value.

IX. In the thirteenth instruction the jury was told that the testimony elicited from Buchanan on cross-examination was not to be considered as proof of the value of the property, but only as bearing on his opinion with reference thereto. The amount of insurance on a building furnishes no direct evidence of its value. *Union Pacific R. Co. v. Lucas,* 136 Fed. 374 (69 C. C. A. 218). But the issuance of insurance policies by an agent or the allowance of additional concurrent insurance by him may indicate an estimate of value such as is inconsistent with that expressed on the witness stand, and, if so, such facts may be elicited for impeachment purposes. As the policy of $500 was additional to two policies only of $1,000 each and was not shown to permit additional insurance, it is doubtful whether the

9. SAME: evidence of value.

evidence of additional insurance was inconsistent with the testimony of the witness, and, if not, there would be no occasion for such an instruction.

X. The plaintiff testified that defendant represented to him that he had paid over $6,000 for the town property; that he was not familiar with the value of property in that part of Grinnell; and that he relied on such representation in making the exchange. The defendant denied having stated how much the property cost. The consideration in fact paid was $4,000 and the improvements on the premises since then had cost about $450; so that, had the jury found the representation was made, it must necessarily have concluded that it was false. See *Dorr v. Cory,* 108 Iowa, 725. The court instructed the jury that: "It is the duty of every person in transacting business to use ordinary care and prudence. If false representations are made regarding matters of fact, and the means of knowledge is equally open to both parties, and then one party, instead of informing himself, sees fit to put himself in the hands of the other, whose intent is to mislead him, the law will give him no remedy for his injury; and in this case, if you find from the evidence that the plaintiff knew, or should have known by the exercise of ordinary care and prudence under all the circumstances, that the alleged representations were false before the contract was executed and the properties exchanged, then the plaintiff would be estopped and could not recover. Ordinary care and prudence, as here used, is such care and prudence as an ordinarily careful and prudent man would exercise under like circumstances." The doctrine as above stated was not applicable to the case. The statement alleged to have been made was of facts within the personal knowledge of defendant. He had negotiated the purchase and made the subsequent improvements within thirteen months previous. Where the facts are peculiarly within the alleged wrong-

*Margin note:* 10. FALSE REPRESENTATIONS: damages: negligence of party defrauded as defense.

doer's knowledge, he may not urge as a defense that the complaining party did not resort to the means available for the detection of their falsity, or was negligent in failing to examine the public records for that purpose. *Bondurant v. Crawford*, 22 Iowa, 40; *Hale v. Philbrick*, 42 Iowa, 81; *Carmichael v. Vandebur*, 50 Iowa, 651; *Gardner v. Trenary*, 65 Iowa, 646; *Riley v. Bell*, 120 Iowa, 618; *Howerton v. Augustine*, 145 Iowa, 246; Bigelow on Fraud, 528. In other words, a seller who has successfully entrapped his victim by false statements of the kind mentioned will not be permitted to escape when called upon to account in a court of justice on the ground that his dupe did not, but ought to have suspected him to be a knave.

It is said in 14 American & English Encyclopedia of Law (2d Ed.) 120, that "by the overwhelming weight of authority ordinary prudence and diligence do not require a person to test the truth of representations made to him by another as of his own knowledge, and with the intention that they shall be acted upon, if the facts are peculiarly within the other party's knowledge or means of knowledge, though they are not exclusively so, and though the party to whom the representations are made may have an opportunity of ascertaining the truth for himself." The authorities abundantly support the text, and are in harmony with those of this state to which reference has been made. The principle was applied to a case like this in *Zang v. Adams*, 23 Colo. 408 (48 Pac. 509, 58 Am. St. Rep. 249). See *Hoock v. Bowman*, 42 Neb. 80 (60 N. W. 389, 47 Am. St. Rep. 691); *Fargo Gas & Coke Co. v. Fargo Gas & Electric Light Co.*, 4 N. D. 219 (59 N. W. 1066, 37 L. R. A. 593); *Watson v. Molden*, 10 Idaho, 570 (79 Pac. 503); Bigelow on Fraud, 521 *et seq.*; 20 Cyc. 32.

Because of the errors mentioned, the judgment is *reversed.*