C. H. CREAMER, Appellant, v. H. E. STEVENS, Appellee.

**FRAUD: False Representations—Jury Question.** Evidence tending to
1   show the material falseness of representations that lands were "good farm lands, not subject to overflow, and worth $225 per acre," reviewed, and held to present a jury question on the issue of damages, even though plaintiff had made a superficial examination of the land prior to the purchase.

     EVANS, C. J., and ARTHUR, J., dissent.

**FRAUD: False Representations—Negligence of Victim.** Principle rec-
2   ognized that it does not lie in the mouth of one who has grossly misrepresented a thing to plead that his victim was an easy mark.

*Appeal from Warren District Court.*—L. N. HAYS, Judge.

DECEMBER 15, 1921.

ACTION at law, to recover damages for fraud and misrepresentation in the sale and exchange of real estate. Trial to a jury. At the close of plaintiff's evidence, the trial court directed a verdict for defendant. Plaintiff appeals.—*Reversed.*

*Clarke & Cosson* and *W. H. Berry,* for appellant.

*A. V. Proudfoot* and *V. R. McGinnis,* for appellee.

PRESTON, J.—The evidence must be construed most strongly in plaintiff's favor. Plaintiff was a farmer, residing, at the

time of this transaction, at Geddes, South Dakota.  He now lives at La Feria, Texas.  Plaintiff owned 320 acres of land near Geddes.  The land was under cultivation, and upon it was what plaintiff describes as a fine house.  The land was incumbered.  Plaintiff had listed it for sale with agents at Geddes, at $100 per acre.  Defendant is a resident of Iowa, and plaintiff testifies that he understood that defendant had not been a resident of Texas.  Defendant was the owner of 80 acres of land near Mercedes, Texas, which he had owned for more than three years before the execution of the contract in question.  This land is eight or ten miles from La Feria.  Defendant had listed his Texas land with an agent named Beck, at Geddes.  There was some talk between plaintiff and Beck about exchanging the two properties, but the terms were not discussed.  This was before plaintiff had met the defendant, and before plaintiff had gone to Texas, and before he had seen defendant's land.  The negotiations between plaintiff and defendant, the alleged false representations, and the execution of the written contract for the sale or exchange of the properties, were had after plaintiff had returned from Texas.  Plaintiff, through an agent at Geddes, had purchased 80 acres of land near La Feria, a few months before the transaction in question; and he bought 24 acres more, also near La Feria, when he was in Texas.  As we understand the record, plaintiff had been induced by some land company to go to Texas to look at land near La Feria, and he purchased the first 80 acres at that time.  Later, plaintiff went to Texas again with a land company, on a land excursion, taking a person with him to look at land belonging to the company.  Plaintiff was acting as an agent, or subagent, for one of the land companies.  The excursion was on the land company's car.  This was a part of his business on that trip.  While there, he availed himself of the opportunity of driving over to defendant's 80 acres.  This was a part of his business on the trip.  The plaintiff says he made only a hasty and cursory examination of defendant's land; that, when he got within half a mile of it, the driver ran into a mudhole, and plaintiff walked half a mile, and got up to the bridge that runs over the irrigation canal at the northwest corner of defendant's 80; that from there he could look over the entire

<div style="margin-left: 0">

1. FRAUD: false representations: jury question.

</div>

land, it being level; that he did not go over the land. The evidence shows that little good would have been accomplished by walking over it, as conditions existed at that time. The land was covered with undergrowth and some timber. He noticed a slough with some water in it near the corner, probably 100 yards. The slough seemed to run along north, and then turned away from the land 100 yards east from where he was. The slough was about 100 yards across,—could not see 'how long. This was two weeks before he saw defendant. He says the land looked pretty; that there was no evidence that it had overflowed or would overflow. The excursion train was to leave in the evening, and plaintiff was in a hurry to get back to town to go with the land company, because of the cheaper rates. He walked back to town down the railroad track. Plaintiff was shown the defendant's 80 by one Riggs, who lived near the land. Riggs told plaintiff, in substance, that the land was liable to overflow. Plaintiff returned to Geddes, and while he and defendant were there, negotiating for the sale or exchange of the lands, plaintiff told defendant that he had heard that the land overflowed, and asked him "What about it?" . Defendant said that there was nothing to that; that the land was all right, and he did not know why anybody would knock on that land.

"He said it was just the land that he wanted, and that he had decided to go down there and live on it; but on account of some sickness or death, he had decided not to go, and to offer it for sale. I made him an offer, and tried to get him to come down to $200, but he would not cut a bit. He said his land was worth $225 an acre, worth the money, and he could not do any better. He recommended it as good land; that it was good farm land. I believed the defendant, believed him as against Riggs. I relied on what Stevens said. I believed he told me the truth,—that caused me to enter into the written contract. I told him I had always held my land at $100 an acre. He refused to close on those terms, and I finally came down to $90. I never saw his land except the one time, and I glanced over it before the deal was closed in South Dakota."

Plaintiff says that $90 an acre was the actual value of his land. Plaintiff, while in Texas, made no other investigation or inquiry than stated. The representations were that defendant's

land was worth $225 an acre; that it was good land, good farm
l . d : at it did not overflow. These representations as to
i .ty e⁻e made by the owner of the land. The
s .... t .e land wa; not worth to e⁻ eed $ ·) to
t..at t.e land d d overflow; that it lies between two
... d t e lowest part of this land is in the water.o. rse ,be-
.eu. the lake.;, and overflows in case of overflow of the Rio
Grande River,—sometimes several times a year, other times
there are two or three years when it does not overflow; that, at
one time, the water was from 1 to 8 feet deep over the entire
80 acres; that the effects of the overflowing would not show,
except at the time of the overflow or soon after; that there was
nothing to indicate, at the time of the year when plaintiff saw
it, that it did overflow; that the soil is a sort of a gumbo, hard
and sticky; that, when it is hard, it is impossible to do anything
with it; that only just at the right time can you do anything
with it; that it is sour and heavy; that it will not raise good
crops,—a little cotton, cane, and broom corn.

It appears that there is an irrigation ditch near this land,
but the evidence is that it was not large enough to effect an
overflow. Another witness says that from his experience in
farming irrigated land around Mercedes, he would say that the
land is worthless for farming.

"The fact is that you cannot get mules enough in Hidalgo
County to pull a plow through it right now; it is very hard to
work. When it is dry, it is very hard. When it is wet, nobody
can get on it; nobody can walk on it."

The character of the land in these respects would not be
readily observed by such an examination as plaintiff made,—
at least, it was for the jury to say. There is other evidence
that the land lies fairly well for irrigating purposes. The evi-
dence is that the land would have been worth $225 or more, if
as represented. We have not attempted to go into the details
of the evidence.

It is contended by appellant that gross inadequacy of price,
of itself, is a badge of fraud. They cite *Boyd v. Ellis*, 11 Iowa
97; *Smith v. Grimes*, 43 Iowa 356, 363; *Sutton v. Greiner*, 177
Iowa 532, 536; and other cases. But the two main points in the
case are whether the representations were mere puffing, trade

talk, or expressions of opinion only, or whether they are actionable; and second, whether plaintiff, under the evidence in the case, as matter of law, relied upon his own investigation, and is therefore estopped from claiming that he relied upon and was deceived by the representations of defendant.

1. The argument of appellee proceeds upon the theory, at least in part, that the mere expression of opinion as to value is not actionable, and that such are the only representations relied upon. As seen by the foregoing, the matter of the value of the land was not the only representation. There were representations of fact; at least, it was a question for the jury whether they were representations of fact or mere expressions of opinion. *Hetland v. Bilstad,* 140 Iowa 411, 415; *Hise v. Thomas,* 181 Iowa 700. It is the general rule that mere expressions of opinion as to the value of property, when standing alone, do not constitute actionable fraud. But a representation as to value, in connection with other facts, made and intended to be taken as a fact, where believed and relied upon by the opposite party to his injury, is actionable. *Hetland v. Bilstad,* supra; *Hise v. Thomas,* 181 Iowa 700. See, also, *Ross v. Bolte,* 165 Iowa 499, 508; *Irving v. Wagner,* 175 Iowa 198, 201; *Sutton v. Greiner,* 177 Iowa 532, 535; *Rembe v. Ferguson,* 183 Iowa 29, 37; *Edwards v. Foley,* 187 Iowa 5, 8; *Hogan v. McCombs Bros.,* 190 Iowa 650. Many other cases might be cited on this point, some of which are cited in the cases above. In the *Hetland* case, supra, we quoted with approval from another case, that the rule that no one is liable for an expression of an opinion is applicable only when the opinion stands by itself, as a distinct thing. As said, there are representations other than the statement as to value. The question has been before us many times, and we shall not again review the cases under which plaintiff was entitled to go to the jury on this question. To sustain our conclusion, see cases last above cited, and *Hess v. McCardell,* 182 Iowa 1121, 1126; *Shuttlefield v. Neil,* 163 Iowa 470; *Christensen v. Jauron,* (Iowa) 174 N. W. 499 (not officially reported); *Riley v. Bell,* 120 Iowa 618, 626. The foregoing are the later cases on the subject.

2. It is contended by appellant that, if plaintiff relied upon the statements of defendant, and was defrauded thereby, he is

entitled to relief, even though he failed to resort to the means
available for the detection of the falsity of the
statements; and that he is entitled to relief
even though he made some examination of the
land in question. Many of the cases before cited are cited on
this proposition. In one of the last cases, *Christensen v. Jauron,*
supra, the court instructed the jury that if, upon inspection of
the land, plaintiffs ascertained the falsity of the representations,
if made, or might have done so by the exercise of ordinary dili-
gence, they might not recover. We there said, as we have said
in other cases, that the law is not thus tender of persons practic-
ing deceit; that, if plaintiffs did ascertain the actual condition
of the land, they could not have relied on the representations.
But the victim was not required to exercise diligence to ascer-
tain whether the wrongdoer has lied to him, as a condition pre-
cedent to recovery of the damages suffered in consequence of
the deception. *Hise v. Thomas,* supra; *Holmes v. Rivers,* 145
Iowa 702; *Hetland v. Bilstad,* supra. In the *Holmes* case, we
said:

> "A seller who has successfully entrapped his victim with
> false statements of the kind mentioned will not be permitted to
> escape when called upon to account in a court of justice, on the
> ground that his dupe did not, but ought to have, suspected him
> to be a knave."

See, also, *Button Land Co. v. Noon,* 163 Iowa 547; *Boddy
v. Henry,* 126 Iowa 31, 40; *Riley v. Bell,* 120 Iowa 618; *Shuttle-
field v. Neil,* supra; *Scott v. Burnight,* 131 Iowa 507; *Christensen
v. Jauron,* supra. In the last named case, though the instruc-
tion was erroneous, it was the law of the case, and we considered
the question as to whether plaintiffs ascertained the actual con-
dition of the land, and if not, whether they might have done so
by the exercise of ordinary diligence, as the court had instructed.
Some of the facts there are similar to those in the instant case,
bearing upon that question, and we said that whether there was
diligence depends on the time at the parties' disposal, and other
circumstances. It was held, even under the instruction, that it
was a question for the jury whether plaintiff discovered, or
should have discovered, the actual condition. So it is in the
instant case. It was for the jury to say whether, under all the

*2. FRAUD: false
representations:
negligence of
victim.*

circumstances shown, plaintiff did actually know the condition, character, quality, and value of the land, or whether he relied upon the representations of the defendant, and was deceived thereby. Many of the cases cited by appellee are from other jurisdictions, and some of them are the earlier Iowa cases.

We are of opinion that, under the record, plaintiff was entitled to go to the jury on the questions now presented. The judgment is—*Reversed.*

WEAVER, STEVENS, FAVILLE, and DE GRAFF, JJ., concur.

EVANS, C. J. (dissenting). A very careful reading of all the evidence in the record convinces me that plaintiff did not make a case for the jury.

ARTHUR, J., joins in this dissent.