J. W. McDowell, Appellee, v. B. C. Caldwell, Appellant.

Fraud: SALE WITH OPPORTUNITY TO INSPECT: *Evidence.* Defendant ignorant of merchandise values, as he informed plaintiff, contracted to exchange his farm for plaintiff's stock of goods. Plaintiff represented the stock to be new, or nearly so (being nearly all bought within a year), clean and fresh, that it would invoice at between $2,500 and $3,000, cost price, and was worth 90 cents on the dollar. The stock invoiced at over $5,000, a great part of which was old and unsalable goods, stored in boxes kept out of sight, placed on top shelving, and in a back room, safe from view, except on the closest inspection. Its real value was from $1,000 to $1,500. *Held,* that plaintiff was guilty of such fraud as to invalidate the contract; the facts taking the case out of the general rule that misrepresentations are of no effect where the thing sold is open to equal inspection of the parties, and that false statements as to value do not amount to fraud.

CONTRACTS: *Forfeit not enforceable.* Where a contract to exchange a farm for plaintiff's stock of goods was procured by his fraud, the provision therein that a certain sum should be deemed forfeit money, and, in case of the failure of either to perform the contract, should become due and owing to the other party,—the party in default waiving his right to any defense to the claim of the forfeit,—cannot be enforced against defendant.

*Appeal from Dickinson District Court.*—Hon. W. B. Quarton, Judge.

SATURDAY, APRIL 12, 1902.

Suit in equity for the specific performance of a contract for the sale of real estate. The trial court denied the

relief asked, but rendered judgment against defendant for the sum of $500; that being the sum named in the contract which either party should forfeit in case of failure to perform. Defendant appeals.—*Reversed.*

*L. E. Francis* for appellant.

*Hunter & Herrig, St. Clair & Reigard* and *B. F. Barnett,* for appellee.

DEEMER, J.—The making of a contract whereby defendant undertook to convey to plaintiff 240 acres of land in Dickinson county, Iowa, in exchange for a stock of merchandise in the town of Allender, Osceola county, owned by plaintiff, is admitted; but defendant contends that the contract was procured by fraud and misrepresentation, in this: that plaintiff falsely and fraudulently represented: "First, that said stock of goods was a clean, good stock of goods; second, that said stock would readily sell for ninety cents on the dollar; third, that said stock was then worth ninety cents on the dollar on the market; fourth, that said stock would invoice at between $2,500 and $3,000, at cost price; fifth, that this said stock was not an old stock, but was a new stock of goods, and in a good, first-class condition; sixth, that he had purchased nearly all of said stock new since going into business, thirteen months prior to said date; seventh, that he had purchased said stock new at Sioux City and St. Paul, and had his freight bills to show for it; eighth, that there was nothing in a certain back room except some canned fruit, oil and axle grease; ninth, that said stock of goods did not include to exceed $600 of either old stock or worn stock." The contract contained a provision to this effect: "That the sum of five hundred dollars shall be deemed forfeit money, and that in case either party shall fail to perform, each and severally, their portion of this contract, on or before the ninth day of this month, then the

said amount shall become due and owing to the party who is at the time ready and willing to complete his portion of this contract, and that the same shall be payable upon demand, and the party in default waives his right to any defense to said claim of $500 by the party so ready and not in default; and this provision shall have the same effect, upon default, as though the party failing had made an absolute promise to pay the said amount at the time stated." Defendant pleaded this provision of the contract, and averred that, if the court found the contract valid, the plaintiff was entitled to no more than the amount stipulated in the contract as liquidated damages. But defendants expressly denied that plaintiff was entitled to recover anything because of fraud practiced by plaintiff in obtaining the contract. While the trial court refused to specifically enforce the contract, it rendered judgment for the full amount of the penalty fixed therein for non-performance.

The testimony, as we think, very clearly establishes the fraud pleaded by defendant. True, many of the so-called misrepresentations were matters of opinion, and some of them had reference to the value of the goods, which, as a rule, are not treated as sufficient whereon to found a claim of fraud; but there were also affirmative misrepresentations as to the character of the goods, the time when they were purchased; and conduct with reference thereto, which can be explained on no other theory than that plaintiff was endeavoring to perpetrate a gross fraud on the defendant. Prior to the negotiations resulting in the exchange, defendant had been a farmer. He received injuries incapacitating him from farm labor, and concluded to sell his land, or exchange it for a stock of goods. Learning that plaintiff had such a stock, he went to see him, accompanied by an agent with whom he had listed his farm for sale. Defendant informed plaintiff that he knew nothing of such a stock as he (plaintiff) was proposing to trade, and that he (defendant) would have

to take his (plaintiff's) word for the stock. Plaintiff repre-
sented that it was good, fresh, clean stock, and had nearly
all been bought new within the past year; that it was worth
90 cents on the dollar; and that it would invoice $2,500 to
$3,000. On this basis the trade was made. When the
stock was invoiced according to contract, it was dis-
covered there were $5,223 worth of goods; that instead
of being a new, fresh, clean stock, it was made up of
remnants of many old ones; that it contained many ancient
and worthless paper patterns, which were invoiced at $578;
ribbons and trimmings, which were entirely out of date and
valueless, invoicing something over $1,000; old wraps and
other garments which apparently belonged to another age;
and a general assortment of stale and unsalable goods. Plain-
tiff contends that the law tolerates a good deal of lying in
trade, provided the thing bargained for reveals its own qual-
ities, and is open to the equal inspection of the parties, and
that false statements as to the value of an article do not
amount to a fraud. As a general proposition, this is, no
doubt, true, although there are some well-recognized excep-
tions. See *Dorr v. Cory,* 108 Iowa, 731; *Hale v. Philbrick,*
42 Iowa, 83. But assuming, for the purposes of the case,
that these general rules apply, still it appears in this case
that the old and unsalable goods were stored in boxes which
were kept out of sight, placed on top of shelving where they
could not be readily seen, and kept in the back room, in shoe
boxes and other receptacles, safe from view, except on the
closest inspection. These facts, considered in connection with
plaintiff's knowledge of the defendant's nonfamiliarity with
stocks of general merchandise, take the case out of the gen-
eral rules before quoted, and, to our minds, make a clear case
of fraud. *Gardner v. Trenary,* 65 Iowa, 646. The result
was that the stock invoiced something over $5,200, and de-
fendant, instead of getting something in addition to the
stock for his land, as he supposed, was found indebted to

plaintiff in something like $1,400. The real value of the stock is variously estimated at from $1,000 to $1,500. The result was so manifestly inequitable that the trial court refused to specifically enforce the contract, although he treated the forfeiture clause as binding, held that it should be treated as liquidated damages, and rendered judgment for plaintiff for the amount therein provided. Plaintiff does not appeal; hence the only question is, should he have had judgment for the $500 forfeiture provided in the contract? Conceding, for the purpose of the case, that this should be treated as liquidated damages, and not as a penalty, —a point which is, of course, open to debate,—we are nevertheless constrained to hold that, as the contract was procured through misrepresentation and fraud, it should not be treated as valid for any purpose. A contract which is induced by fraud cannot be enforced. This is elementary doctrine, and needs no citation of authorities in its support. But see *Nixon v. Carson,* 38 Iowa, 338. As the contract was procured by fraud, the forfeiture cannot be enforced. Indeed, it is doubtful if a court of equity would enforce it under any circumstances.

The decree of the trial court is reversed, and the case is remanded for further proceedings in harmony with this opinion.—REVERSED.