R. G. SUTTON, Appellant, v. JOSEPH GREINER, Appellee.

**FRAUD: Fraudulent Representations—Value of Property—When**
1 **Material.** Representations as to the value of property remotely situated from the parties, made by one familiar therewith, for the purpose of inducing another, who is without knowledge of the property, to rely thereon and bargain for the property, are material statements of fact, and, if false, lay the foundation for rescission of the contract.

**FRAUD: Fraudulent Representations—Exchange of Property—Mu-**
2 **tual Exaggeration of Values.** Evidence reviewed, and held sufficient to clearly carry to the jury the question whether an exchange of properties was consummated through plaintiff's false representations as to the value of his property, or whether the transaction was simply a case of the mutual exaggeration of the value of properties, without undue advantage to either party.

**FRAUD: Acts Constituting—Inducing Intoxication.** Evidence re-
3 viewed, and held sufficient to justify the submission to the jury of the question of defendant's intoxication and plaintiff's part in inducing the same.

**FRAUD: Defenses—Confederates—Agency.** Manifestly, one will not
4 be heard to say that he is not responsible for the fraud of a confederate simply because the confederate is the agent of the one defrauded.

**FRAUD: Defenses—Extravagant Nature of Representations.** It is no defense, between parties to a fraud-induced contract, that the representations which induced the contract were so exaggerated that the party defrauded ought not to have relied thereon.

**TRIAL: Instructions—Stating Issues by Copying Pleadings.** It is not necessarily erroneous for the court, in stating the issues, to copy the pleadings at considerable length.

*Appeal from Clarke District Court.*—THOMAS L. MAXWELL, Judge.

TUESDAY, SEPTEMBER 26, 1916.

ACTION at law to recover damages caused by defendant's failure to perform a written contract for exchange of land owned by defendant in Manitoba for other property owned by plaintiff in Colorado. There was a verdict and judgment for the defendant, and plaintiff appeals.—*Affirmed.*

*O. M. Slaymaker,* for appellant.

*Temple & Temple,* for appellee.

WEAVER, J.—The parties executed a written contract, whereby plaintiff undertook to sell to defendant a certain house and lot in the town of Palisades, Colorado, and in payment therefor, defendant agreed to convey to plaintiff 400 acres of land in Manitoba, and, further, to pay him the sum of $1,000 in money. The conveyances were to be delivered within 30 days. Defendant having refused to carry out the agreement, plaintiff brought this action for damages. The defendant admits making the contract, but avers that it was obtained from him by fraud and deceit, and that, having discovered the wrong which had been perpetrated upon him, he at once, and within the period of 30 days, rescinded the contract and so notified the plaintiff. According to the testimony of defendant, the land owned by him in Manitoba was worth $14,000, subject to a lien of $5,200. He was formerly a resident of Iowa, and, being desirous of returning to this state,

he sought an opportunity to exchange the land for Iowa property. To that end, he requested one Pringle, a real estate agent, to secure him a customer. Soon thereafter, Pringle informed defendant that he had found a prospective customer, and requested a meeting of the parties at Osceola. Defendant accordingly went to Osceola, where he met Pringle, who introduced him to plaintiff, and, later in the same day, the contract in suit was executed. Defendant claims that plaintiff and Pringle, conspiring together to swindle him, induced him to drink freely of intoxicating liquor, furnished by them, whereby he was unable to exercise judgment and care to protect his own interests, and by this means and by false representations and deceit procured the contract. He says that plaintiff, not having any Iowa property such as he desired to obtain, proposed to exchange the Colorado property for the land. Defendant had never seen the house or lot and knew nothing of its quality or value, except as it was revealed by a photograph which plaintiff exhibited. Plaintiff had himself visited the property, and told defendant, as the latter swears, that it had a market value of $10,000. In alleged reliance upon this representation, defendant entered into the contract. His land was estimated at $14,000, and his equity therein at $8,800. After some negotiation as to the difference of $1,200 between these estimates, it was agreed, as shown in the contract, that defendant should make a deferred payment of $1,000 and assign to plaintiff the unpaid rent on the land, some of which was under lease. Defendant further says that, very soon after the contract was executed, he made investigation, and found that the Colorado property was worth not to exceed $2,500, whereupon he repudiated and rescinded the agreement. The jury sustained the defense so pleaded and found against the plaintiff. In argument to this court, appellant relies upon the following propositions:

I. The insufficiency of the evidence to sustain the defense. It is said that the representations as to the value of

the Colorado property were mere expressions of opinion, on
which defendant had no right to rely, and do
not amount to fraud.  Counsel concedes, however, that statements of value "may become
representations of fact on which the purchaser
may rely," but insists that the rule cannot
properly be applied in this case.  Giving to the testimony, as
we must, the most favorable interpretation it will fairly bear
in support of the verdict, the trial court was clearly right in
submitting this issue to the jury.  Defendant had never seen
the property, and had no notice or knowledge whatever of its
character or value except as he was informed by the plaintiff,
who had visited and inspected it.  Under such circumstances,
a false statement of market value of property, upon which it
is intended that the purchaser shall rely and be thereby induced to make the purchase, becomes a material representation, and, if believed and acted upon, it justifies the party
thus overreached in rescinding the agreement.  The doctrine
that proof of mere "trade talk" or "puffing," such as is common to the seller or trader of property, is not sufficient to sustain a charge of fraud, has no application to false representations of material facts which are, in their nature, calculated
to deceive, and are made with intent to deceive.  *Harris v.
Rosenberger* (C. C. A.), 13 L. R. A. (N. S.) 762, 766.  The
rule on which appellant here relies, which, under ordinary
circumstances, renders representations or statements of value
nonactionable, applies only where the parties stand on equal
footing and have equal means of knowledge and there is no
relation of trust or confidence between them.  *Mattauch v.
Walsh*, 136 Iowa 225; *Hanson v. Kline*, 136 Iowa 101; *Hetland v. Bilstad*, 140 Iowa 411, 415; *Murray v. Tolman*, 162
Ill. 417; *Schumaker v. Mather*, 133 N. Y. 590; *Huffstetter v.
Buzett*, 32 Ind. 293; *Grim v. Byrd*, 32 Gratt. (Va.) 293;
*Kenner v. Harding*, 85 Ill. 264, 270.  Quite in point with the
case before us is our own case of *Scott v. Burnight*, 131 Iowa

1. FRAUD: fraudulent representations: value
of property:
when material.

507. See also *Fulton v. Fisher*, 151 Iowa 429–437; *Nowlin v. Snow*, 40 Mich. 699; *Van Vliet v. Crowell*, 171 Iowa 64. Indeed, the rule, as we have stated it, is too well settled in this and most jurisdictions to call for further discussion. In this case, the defendant, as we have seen, did not know the property, which was in a distant state. Plaintiff did know it, and knew its value; or, even if he did not know its value, his positive statement thereof was one on which defendant was entitled to rely as a material representation. The testimony on behalf of defendant was such that, if credited by the jurors, they were justified in finding that plaintiff did represent the property as having a market value of $10,000; that the statement was false and was made as an inducement to defendant to make the exchange; and that defendant, in reliance thereon, entered into the contract. Upon this issue, the jury has found for the defendant, and its verdict cannot be interfered with unless we find some other assignment of error to be well grounded.

Counsel says that the transaction was an ordinary trade or exchange, in which both parties placed an exaggerated value on their property, and that, when real values are compared, there was no undue advantage obtained by plaintiff. Assuming, but without holding, that this proposition, if correct, would work an effective avoidance of the defense to plaintiff's claim for damages, we have only to say that the record does not so show. At least, the fact is not so clearly shown that we may assume its truth as a matter of law. Somewhat singularly, all the evidence offered on the trial as to the market value of the Colorado property and of the Manitoba property, so far as given by disinterested witnesses, was introduced by the plaintiff. The defendant appears to have been content to rest his case, in this respect, upon plaintiff's own showing, and in this we think he was justified. The evidence so offered by plaintiff was such that the jury could have found the Colorado property to have been

2. FRAUD: fraudulent representations: exchange of property: mutual exaggeration of values.

worth but $2,500, and the land which he was to have obtained
in exchange therefor to have been worth $14,000, subject to·
an incumbrance of $5,200—a disproportion so radical and
startling as to suggest the thought that no man in his senses,
unless in some manner deceived or misled, would have con-
sented to such terms.    If it be said that this computation
involves an acceptance of the highest estimate upon defend-
ant's property and the lowest upon the property of plaintiff,
we must still say it was within the jury's province so to find.
But even if the jury, for the purpose of comparison, should
have averaged the several estimates upon both pieces of prop-
erty, defendant's equity in his land was $6,950, while the
equity he was to receive in the Colorado property (counting
the $1,000 "boot money" as a charge thereon) was but $3,000.
From any view of the facts disclosed by the record, a case
was presented calling for the careful scrutiny of the court and
jury.    If the advantage thus obtained by plaintiff was legiti-
mately acquired, he was, of course, entitled to a verdict not-
withstanding the magnificent proportions of his profit, but
such results are so unusual, where a deal is openhanded and
fair on both sides, that the court should not unduly narrow
or restrict the jury in getting at all the essential facts.    Fraud
will not be presumed, but, once fairly established, the law will
not permit the party practicing it to reap any advantage
therefrom.    The plaintiff, as a witness, denies the truth of
most of the story told by the defendant, and in this he is, to
a considerable degree, corroborated by Pringle; but it is not
for the court to say which witness told the truth.    The jury
evidently believed defendant's evidence to be the more cred-
ible, and if so, it cannot be said that the verdict is without
support in the record.    Some light upon plaintiff's conception
of the ethics of business is shown by his admission, on cross-
examination, that, in making the deal, he was willing that
defendant should believe that the Colorado property was worth
$10,000, and that he didn't care what defendant believed.    If
the jury concluded that this admitted willingness for defend-

ant to be deceived in a material matter pertaining to the subject of the trade rendered more probable the truth of the testimony that plaintiff did in fact actively aid in accomplishing such deception, it was neither a strange nor an unnatural deduction. That the representation, if made as charged, was untrue, there is no room for doubt, and that plaintiff knew it to be untrue is scarcely less certain. The verdict must, therefore, stand, unless we find reversible error in some of the rulings below, of which plaintiff complains.

II.  Error is assigned upon an instruction given by the court to the effect that, in passing upon the charge of fraud made by the defendant, the jury was at liberty to consider the testimony bearing upon the question whether he was intoxicated at the time. The point is made that there was no evidence to justify such instruction. We think otherwise.

3. FRAUD: acts constituting: inducing intoxication.

The defendant swears that, at the outset of the meeting of the parties at Osceola, the plaintiff and Pringle pressed upon him an invitation to drink, and that he, at that time, consumed a quart of beer which plaintiff provided. Then, after the negotiations had progressed a while, plaintiff and Pringle renewed their hospitable solicitations, and he drank another quart of beer. He further says he was not accustomed to drink, and the beer made him "sick." The court is unable to say, from observation or experience, that two quarts of beer, taken under such circumstances, could not have so addled the brain or befuddled the judgment of defendant as to render him more easily misled into an inequitable contract, or that the jury could not rightfully conclude therefrom that he was, in truth, intoxicated. It is not charged or claimed that he was intoxicated to a degree rendering him helpless, or even wholly incompetent to do business, but the fact of drinking freely and its natural effect upon him are material circumstances in the transaction with which the jury was properly made acquainted, and the court's instruction with reference thereto was not improper.

We do not overlook the fact that, while plaintiff and Pringle admit the beer-drinking incident, and that plaintiff supplied the liquor, they both say that defendant asked for it. They further say that the bottles emptied by defendant were not quarts, but pints, and they express the decided opinion that he was not in the least intoxicated; but we think it not impossible that, even if a marked state of intoxication is not produced in a person by the drinking of a half-gallon of beer, it may yet so mellow him (especially if he is not accustomed to such indulgence) as to make it easier for a designing person to "work him." Counsel scoffs at defendant's claim to temperate habits, and informs that, if the court could see the man, "it would be convinced that a half dozen such fellows could support a brewery;" but neither the man nor his portrait was made an exhibit of record, and we are compelled to disregard the statement as irrelevant. As we have said with reference to other fact issues, the defendant's condition at the time the contract was made was a matter of dispute on the trial, and it was for the jury to pass upon its truth. The exception to the instruction must be overruled.

III. Plaintiff requested the court to instruct the jury that, as Pringle was defendant's agent, plaintiff should not be held responsible for any statement or representation made by such person to induce the trade. The requested instruction is manifestly unsound.

4. FRAUD: defenses: confederates: agency.

The mere fact that Pringle was defendant's agent to find a customer for an exchange of properties does not render it impossible that he should have colluded with plaintiff; and if such was the case, plaintiff could not avoid responsibility by pointing out that Pringle came into the deal originally as the representative of defendant. It is to be said, however, that the court, in its instructions, clearly charged that the defense rested upon alleged false representations by the *plaintiff*, by which defendant had been deceived and misled into signing the contract; and that, to sustain such defense, it was necessary for him to prove that *plaintiff* stated and

represented to him that the Colorado property was of the value of $10,000, with the intent and purpose of inducing him to rely on such representations; and that defendant did rely thereon and was thereby induced to make the contract. The jury was further told that, to justify such a verdict, they must further find that such representations were false, and known by *plaintiff* to be false at the time he made them. This statement of the vital issues was directly in line with counsel's contention that plaintiff must be held liable, if at all, for the falsity of his own representations, and was even more favorable to him than he was strictly entitled to, under the issues pleaded.

IV. Plaintiff further asked the court to instruct the jury that, to sustain the defense, it must be shown not only that the alleged false representations were made by plaintiff, but that they were of such nature or character as

5. FRAUD: defenses: extravagant nature of representations. to deceive an ordinarily prudent person, and that it must further appear that defendant "was free from any negligence in relying thereon." It is to be conceded that authorities substantially to this effect may be found, but it is equally true that the rule, as broadly stated by counsel, is now generally repudiated by the courts. We have repeatedly refused to recognize it in cases of this character. The more reasonable and just rule is that, as between the parties to a contract obtained by fraud and deceit, the party making a misrepresentation for the purpose of inducing another to act will not be heard to say that his false statement ought not to have been believed. *Riley v. Bell*, 120 Iowa 618; *Hetland v. Bilstad*, 140 Iowa 411, 420; *Howerton v. Augustine*, 145 Iowa 246, 248. Answering to the same suggestion in a case where the alleged representation was of an extravagant and improbable character, it has been said:

"The objection that on its face the scheme was impossible of execution, and therefore should have deceived no one, is without merit. Schemes to defraud depend for success not on what men can do, but upon what they may be made to believe,

and the credulity of mankind remains yet unmeasured.''
*O'Hara v. United States,* 64 C. C. A. 81.

Speaking to the same purpose, and refusing to apply the
rule the plaintiff here contends for, the Wisconsin court has
well said:

"The sole question is whether the misrepresentations in
fact deceived the party involved and materially affected his
conduct. Effectiveness of deceit is to be tested by its actual
influence on the person deceived, not by its probable weight
with another.'' *Bowe v. Gage,* 127 Wis. 245; *Barndt v. Fred-
erick,* 78 Wis. 1.

In the latter case, the court, speaking by Lyon, J., says:

"If the representations were so extravagant that sensible,
cautious people would not have believed them, that is a proper
consideration for the, jury in determining whether the plain-
tiff believed and relied upon them; but it does not preclude a
finding that plaintiff did so, nor relieve the defendant from
liability for his fraud, if he committed fraud. It is as much
an actionable fraud wilfully to deceive a credulous person with
an improbable falsehood as it is to deceive a cautious, sagacious
person with a plausible one. The law draws no line between
the two falsehoods.''

The trial court did not err in refusing the requested
instruction.

V. The final exception argued is that the court erred in
stating the issues to the jury, in that the defense pleaded is
recited very largely by the court in the language of the
answer. It is quite probable that the court
stated the position of the defendant with un-
necessary particularity. It is also true that
this court has condemned the practice of
copying the pleadings of the parties into the court's charge,
but we are of the opinion that there is in this case no such
violation of that rule as necessitates a new trial. The state-
ment is not so confused or couched in such obscure or technical
language as to confuse or mislead the jury. The court placed

6. TRIAL: instruc-
   tions: stating
   issues by copy-
   ing pleadings.

the burden of proof upon the defendant, and guarded the legal rights of the plaintiff by a full and fair statement of rules applicable to cases of this character. This being done, and the issue being one of fact upon which there is a conflict of testimony, the verdict must stand.

The judgment below is—*Affirmed.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.