JOHN M. HESS, Appellee, v. E. G. McCARDELL et al., Appellants.

FRAUD:    False    Representations—Reliance—Evidence—Value    of
1  Properties Exchanged.   In an action for damages for fraud in the exchange of properties, evidence of the value of the property which plaintiff turned over to defendant is admissible, because bearing on the issues:

(a) Whether defendant made the representations alleged; and

(b) Whether plaintiff relied on said representations, if they were made.

FRAUD:    Fraudulent    Representations—Value—Reliance,    Etc.—In-
2  structions.   Representations *as to value* are actionable when they are (a) false, (b) known to be false by the one making them, (c) made to one known to be ignorant of the true value, (d) made for the purpose of inducing the contract, and (e) relied on.   Instructions reviewed, and held correct.

TRIAL:    Instructions—Assumption  of  Issuable  Fact—Fraud.   In-
3  structions reviewed, and held not guilty of the vice of assuming that plaintiff was ignorant of the value of property traded

for, especially in view of the fact that his ignorance was practically conceded.

FRAUD: Acts Constituting Fraud—False Representations—Implication of Scienter and Fraudulent Purpose. *Scienter* and fraudulent purpose are constructively supplied by the law in those cases where a person, for the purpose of inducing the execution of a contract, positively asserts a certain fact to exist *as of his personal knowledge*, when in truth the fact does not exist.

APPEAL AND ERROR: Harmless Error—Erroneous Exclusion of Testimony—Assumption of Truth of Issuable Fact. Error in excluding evidence bearing on a certain point is harmless when the court, in its instructions, assumed the truth of the point in issue.

FRAUD: Damages—Measure—Fraudulent Exchange—Values of Properties. Fraudulent representations in an exchange of properties is compensated by a measure of damages representing the difference in value between that which the defrauded party did receive and that which he would have received had the representations been true. It follows that special interrogatories to the jury as to the value of the property which the defrauded party *parted with* are properly refused, as immaterial on the amount of the verdict.

TRIAL: Special Interrogatories—Immaterial Issues or Facts. Special interrogatories calling for ultimate facts non-determinative of the verdict are properly refused. So held where, in an action for fraud in an exchange of properties, the defendant requested that the jury return a finding on the value of the property which the *defrauded* party turned in on the deal.

TRIAL: Verdict—Impeachment on Motion for New Trial—Affidavits—Competency. Affidavits of jurors to the effect that, in arriving at the amount of their verdict, they proceeded contrary to the definite instructions of the court, are incompetent.

*Appeal from Jasper District Court.*—HENRY SILWOLD, Judge.

FEBRUARY 16, 1918.

ACTION for damages on account of alleged fraudulent representations by defendants in the exchange of real prop-

erties. Verdict and judgment for plaintiff. Defendants appeal.—*Affirmed.*

C. O. *McLain* and *Tim J. Campbell,* for appellants.

E. J. *Salmon* and *McCoy & McCoy,* for appellee.

STEVENS, J.—This is an action for damages on account of alleged fraudulent representations, in the procurement of a contract for the exchange of real properties. Plaintiff alleged in his petition that, prior to the transactions complained of herein, he was the owner of a tract of land in Kossuth County, consisting of 623 acres; that, on or about the 15th of January, 1915, he entered into a contract in writing with the defendant E. G. McCardell, who, with his son, was a part owner of the property the record title to which was in one John W. James, by the terms of which he agreed to exchange said Kossuth County land for Chicago property, which consisted of two lots and a building constructed as a double flat; that all of the negotiations for the exchange of said properties were carried on between the plaintiff and the defendant E. G. McCardell, who, for the purpose of inducing the plaintiff to enter into said contract, and for the purpose of cheating and defrauding him out of his Kossuth County land, "fraudulently and falsely orally represented to the plaintiff that they (defendants) personally knew the cash value of said Cook County property and what the same was actually worth on the market, and that said property then and there was of the fair and actual cash value of $80,000 and so rated in the locality where situated; that, if plaintiff became the owner of said Cook County property, he would thereupon be entitled to collect and receive the rentals thereof accruing by reason of such ownership, and aggregating approximately $500 per month." Plaintiff further alleged that each and all of the statements and representations were wholly false and untrue, and that the same were, at the time, known to them to be false and untrue, and that

plaintiff did not know the facts concerning said property, and that he believed and relied upon the said statements and representations of the defendants.

Plaintiff, by an amendment to his petition, further alleged that the defendants also fraudulently represented to him that the lots upon which the said Chicago flats were constructed cost $15,000, and the buildings, $65,000; that the said property yielded a gross income of $5,600, and a net income of about $2,500 per annum; all of which, plaintiff alleges, was false and untrue, except that the gross income was about as stated.

The defendants, for answer to plaintiff's petition, admitted the execution of the contract, and denied all of the remaining allegations thereof.

The plaintiff resided at Oskaloosa, and the defendants, at Newton; but they were not acquainted with each other until the negotiations were begun between them for the exchange of the properties in question.

It appears that the defendant E. G. McCardell, and Fred Brown, a real estate man from Marshalltown, with whom plaintiff had previously talked respecting the sale of his Kossuth' County land, and to whom he had offered $1,000 if he would sell it, called upon the plaintiff at Oskaloosa on January 13, 1915, when negotiations were opened for an exchange of properties. On the day following, the plaintiff and E. G. McCardell met George D. Brown, Fred Brown's father, at Grinnell, and the three went together to Chicago, examined the flats, and entered into the contract in question. From Chicago, the plaintiff and Brown returned to their respective homes, and the defendant E. G. McCardell went directly to Kossuth County, where he sold the land (which was encumbered for $33,000) for $53,000. Plaintiff testified that, before they met Brown at Grinnell, the defendants represented to him that they personally knew the value of the Chicago property; that it

cost $80,000; that they knew that to be its value; and also made the alleged representations regarding the rents of said building. The evidence showed that the Chicago property cost, including the lots, $42,000, and, at the time of the transactions in question, was encumbered for $35,000 or $36,000. The evidence offered upon the trial tended to show the value of the Chicago property to be somewhat more than the cost thereof; whereas the jury, in answer to a special interrogatory, fixed its value at $54,000. The defendant Harry McCardell denied having made any statements to the plaintiff relative to the cost or value of said property, or of knowledge thereof.

E. G. McCardell testified that he had formerly resided in Newton, but that, about 1904, he had moved to Zion City, where he resided until 1910. He further denied that he represented the property to plaintiff to be of the value claimed, or that he assumed to know the value thereof.

There is some controversy in the record as to whom George Brown represented, whether plaintiff or defendants. Each claims that he represented the other, and both entered vigorous denials. It also appeared from the evidence that the rents of the Chicago property had been assigned to the holder of a second mortgage, and that a portion thereof monthly was to be applied on said mortgage indebtedness. Plaintiff claims that this matter was not mentioned; whereas E. G. McCardell testified that it was, and that the facts were fully made known to plaintiff. Plaintiff testified that most of his life had been devoted to agricultural pursuits; whereas defendant E. G. McCardell was engaged in the blacksmith business until the last few years, during which time he has followed manufacturing pursuits. The evidence also showed that, while the record title to the Chicago property was in John W. James, and E. G. McCardell acted as his attorney in fact, defendants were the owners of a one-half interest therein.

I. The principal alleged errors of the trial court relate to instructions given and to the refusal of the court to give certain other instructions requested by defendants.

**1. FRAUD: false representations: reliance: evidence: value of properties exchanged.**

There is, however, some complaint of the court's ruling upon the admission of testimony, and of its ruling upon appellants' motion for new trial. Plaintiff was permitted to offer evidence of the market value of the Kossuth County land, over the objections of defendants that same was immaterial, and calculated to mislead the jury in fixing the amount of the verdict, if it found for plaintiff, and that it did, in fact, cause the jury to violate the court's instructions upon this question. The evidence was clearly admissible, as throwing light upon the question whether the alleged representations were, in fact, made by defendant or relied upon by plaintiff. The court limited the jury, in its consideration of this evidence, to this question, and specifically told them that it must not be considered upon any other question. *Vaupel v. Mulhall,* 141 Iowa 365; *Skeels v. Porter,* 165 Iowa 255; *Ross v. Bolte,* 165 Iowa 499; *Hibbets v. Threlkeld,* 137 Iowa 164; *Sutton v. Greiner,* 177 Iowa 532.

II. Exception was taken to numerous instructions of the court, and also to the refusal of the court to give certain requested instructions. The following are among the instructions complained of:

**2. FRAUD: fraudulent representations: value: reliance. etc.: instructions.**

"5. Ordinarily, the statements of a person who is negotiating for the sale or trade of property that the property is of a certain value, is but the statement of an opinion, or commonly known as trade talk, and a claim of fraud cannot properly be based thereon; but if the plaintiff made known in any manner that he was ignorant of the value, and of other matters stated by the defendants, or either of them, and that he would rely upon the statements of the defend-

ants, and thereafter, the defendants, or either of them, made the statements as statements of fact, such statement or statements, if established, may be the proper basis for charge of fraud, if the statements were in fact false, and known to the person making them to be false. In order for the plaintiff to recover, it will not be necessary for him to show that he relied exclusively upon the alleged representations of the defendants or either of them. If such alleged representations, or some of them, exerted a material influence upon his mind, although constituting but one of several motives which, acting together, produced the result, it will be sufficient.

"7. Where the plaintiff is ignorant of the value of the property, and the defendants know this, and also know that the plaintiff is relying upon defendants' representations as to value, and such representations are not mere expressions of opinion, but are made as statements of fact, which statements the defendants know to be untrue, such a statement is a representation by which the defendants are bound, when such statements are made with an intent to deceive and mislead the one to whom they are made, and he is thus induced to forbear making inquiries which he otherwise would, then they amount to an affirmation of fact, rendering the defendant or defendants liable therefor. An unqualified statement that a fact exists, made for the purpose of inducing another to act upon it, implies that the person who makes it knows it to exist, and that he speaks from his own knowledge. And if the fact does not exist, and the defendant states, as of his own knowledge, that it does, and thereby induces another to act upon his statement to his injury, the law will impute to him a fraudulent purpose.

"9. The plaintiff had a right to rely upon the alleged representations of the defendants about the Chicago property, instead of going and making an examination or investigation as to these matters. But in going and looking over that

property, as appears from the evidence, and in making the personal investigation with reference thereto, with a view of ascertaining its value and desirability for receiving it in exchange for his farm, the plaintiff was required to exercise ordinary care for his own protection. Now ordinary care is such care as a reasonably careful, cautious, and prudent man would have exercised under the same or similar circumstances. And if the plaintiff, in the matters which he undertook to investigate for himself, failed to exercise such ordinary care for his own protection, then he cannot recover because of misrepresentations, if any, alleged to have been made to him by the defendants about the matters which plaintiff personally undertook to investigate for himself."

3. TRIAL: instructions: assumption of issuable fact: fraud.

The objection urged by counsel to the fifth instruction is that it assumes ignorance upon the part of the plaintiff as to the truth of the alleged fraudulent representations, and to Instruction 7, that it relieved plaintiff from the burden of proving that the defendants knew of the falsity of the alleged representations, and that the form of the instruction carried with it the implication that the alleged false statements were so known to defendants. The jury could well have found, under the evidence,—in fact must have done so,—that plaintiff was entirely ignorant of the value of the Chicago property at the time the negotiations for the exchange thereof for his Kossuth County land began; and this instruction simply told the jury that, if plaintiff made known to defendants that he was ignorant of the value thereof, and would rely upon their statements as to said matter, then such statements, if made, might support an action for deceit. If the instruction is open to any extent to the criticism urged, it was clearly without prejudice to defendants.

The last paragraph of the seventh in-

4. FRAUD: acts constituting fraud: false representations: implication of *scienter* and fraudulent purpose.

struction, to which exception was taken by counsel, is a clear and correct statement of the law, and was quoted with approval and is in harmony with the holding of this court in *Davis v. Central Land Co.*, 162 Iowa 269.

The plaintiff testified that defendants represented to him that they knew, of their personal knowledge, that the Chicago property cost, and was at the time worth, $80,000. Plaintiff clearly had a right to rely upon representations made by defendants as of their personal knowledge, and defendants cannot be heard to say that same was the mere expression of an opinion, and that plaintiff was careless in believing the same to be true and relying thereon. The statements, if made as claimed by plaintiff, were positive declarations, both of knowledge of the truth thereof, and of the value of the Chicago property. Plaintiff was not relieved of the burden of proving any fact material or necessary to his recovery; but, by proof of the assumed personal knowledge of defendants, and of the representations made by them and their falsity, the law imputed to them knowledge thereof, and of the fraudulent purpose in making same. We do not approve the instructions above as a full expression of the law, but we do not think them unfavorable to the defendants. *Ulch v. Wessel,*—Iowa— (July 1, 1918); *Davis v. Central Land Co.,* supra; *Haigh v. White Way Laundry Co.,* 164 Iowa 143; *Richards & Comstock v. Fredrickson,* 171 Iowa 669; *Shuttlefield v. Neil,* 163 Iowa 470; *Fulton v. Fisher,* 151 Iowa 429; *New York Brokerage Co. v. Wharton,* 143 Iowa 61; *Evans v. Palmer,* 137 Iowa 425; *McDowell v. Caldwell,* 116 Iowa 475; *Gardner v. Trenary,* 65 Iowa 646; *Bennett Sav. Bank v. Smith,* 171 Iowa 405; *Van Vliet Fletcher Auto Co. v. Crowell,* 171 Iowa 64; *Roos v. Bolte,* 165 Iowa 499; *Hise v. Thomas,* 181 Iowa 700; *Wilson v. Carpenter's Admr.,* 91 Va. 183 (21 S. E. 243); *Whiting v. Price,* 172

Mass. 240 (51 N. E. 1084); *Crompton v. Beedle,* 83 Vt. 287 (75 Atl. 331); *Sutton v. Greiner,* 177 Iowa 532.

III. It appears from the evidence, as above stated, that plaintiff accompanied E. G. McCardell and George D. Brown to Chicago, for the purpose of looking over the property in question. Defendants requested an instruction to the effect that, if plaintiff failed to exercise ordinary care and diligence,—that is, such as an ordinarily careful and prudent person would exercise, under the same or similar circumstances, in making an investigation as to the value of the Chicago property and other matters which he claims were falsely represented to him,—then he could not recover. In the same connection, counsel complains of the instruction given by the court upon this point. It will be observed that reference is made by the court to this matter in its seventh instruction, and that, in its tenth instruction, the court cautioned the jury upon this point. The instruction given possibly may not be as complete as the one requested by defendants, but, taken in connection with the remaining instructions, it could not have been misunderstood by the jury, and sufficiently covered the question of plaintiff's duty, when on the ground, to investigate and determine for himself the facts as to cost and value of the Chicago property. All questions of fact were properly submitted to the jury upon this point.

IV. Two written mortgage assignments from the plaintiff to Fred Brown, dated February 11, 1915, were offered in evidence. The court in substance instructed the jury that said assignments should be considered only as bearing upon the question whether plaintiff was induced to enter into the contract by representations and statements alleged to have been made to him by the defendants, or either of them, or whether he made the trade from other motives, or in reliance upon his own

5. APPEAL AND ERROR: harmless error: erroneous exclusion of testimony: assumption of truth of issuable fact.

judgment. It is contended by counsel for appellant that it was proper for the jury to consider this evidence upon the question as to whether George · D. Brown was, in fact, the agent of plaintiff, and that the instruction withdrew the same from the jury, so far as this question was involved. There was a controversy as to whom Brown represented, but that question was not submitted to the jury by the court, nor was an instruction requested by defendants upon this point. The court did, however, in its tenth instruction, specifically tell the jury that, if plaintiff relied upon either his own judgment or that of Brown, and not upon the alleged statements and representations of the defendants, in making said contract for the exchange of properties, he could not recover. This instruction was evidently given by the court on the theory that Brown was, in fact, the agent of plaintiff, notwithstanding that the evidence was in conflict upon that point. There was no evidence tending to connect the assignment of the mortgages to Fred Brown with the claimed agency of George D. Brown, and the record does not disclose the consideration paid for the assignment, or by whom paid or the purpose thereof. On the whole, however, the instruction here complained of was as favorable to the defendants as to plaintiff, and if erroneous, in view of the tenth instruction, was not prejudicial.

V. The consideration expressed in the contract was $40,000; but the real consideration was the exchange of the Kossuth County land, subject to certain encumbrances, which were assumed by the grantee, for the Chicago property, subject to certain encumbrances, which were assumed by the plaintiff. The consideration might as well have been expressed as one dollar as any other sum. The court rightly refused to instruct the jury that, if it found that the consideration expressed in the contract was $40,000, the alleged representations of defendants that the

Chicago property was worth $80,000 should be disregarded.

VI. Counsel for defendants requested

6. FRAUD: damages: measure: fraudulent exchange: values of properties.

the court to submit to the jury three special interrogatories, as follows:

"What do you find was the fair and reasonable market value of the .property given in exchange by the plaintiff?

"What do you find was the fair and reasonable market value of the property given in exchange by defendants?

"Do you take into consideration the difference in values of the two properties, in fixing the amount of damages?"

The court, in substance, gave the second and refused the others. The court instructed the jury not to consider the value of the Kossuth County property, in fixing the amount of its verdict, if it found for plaintiff. Counsel for defendants requested, and the court instructed the jury, that the measure of damages would be the difference between the market value of the Chicago property as it was, and its market value if it had been as represented. The

7. TRIAL: special interrogatories: immaterial issues or facts.

jury, therefore, could not rightfully consider the value of the Kossuth County land, in making up the amount of its verdict, and it would have been manifestly improper for the court to have submitted Interrogatories

Nos. 1 and 2. As bearing upon the question here presented, see *Engvall v. Des Moines City R. Co.*, 145 Iowa 560; *Goldstein v. St. Paul Fire & Marine Ins. Co.*, 124 Iowa 143; *Haney-Campbell Co. v. Preston Creamery Assn.*, 119 Iowa 188; *Hawley v. Chicago, B. & Q. R. Co.*, 71 Iowa 717; *Cawker City State Bank v. Jennings*, 89 Iowa 230.

VII. Defendants, in their motion for

8. TRIAL: verdict: impeachment on motion for new trial: affidavits: competency.

new trial, allege that the verdict was the result of passion and prejudice; that the jury was guilty of misconduct, and ignored the court's instruction as to the measure of

damages, and, instead, arrived at the amount of its verdict
by ascertaining the difference in the value of the properties
exchanged, instead of the difference between the actual value
of the Chicago property as it was, and as it would have
been if as represented.

The only evidence as to the actual value of the Chi-
cago property offered was on behalf of the plaintiff. It
appears therefrom that the cost of the lots and buildings
thereon was $42,000. The jury, however, fixed its value
at $54,000, and returned a verdict for plaintiff for $28,-
273. The only evidence of the value of the property if it
had been as plaintiff claimed it was, was his testimony
that both defendants stated and represented to him that
they knew its value, and that it was $80,000. The differ-
ence between the actual value as found by the jury, and
its value as plaintiff claimed it was represented to him,
with interest thereon at six per cent, from the date fixed
by the court in its instruction, would amount to something
more than the sum named in the verdict returned.

Attached to defendants' motion for new trial were
affidavits of two of the jurors, who, in substance, stated
that the jury arrived at its verdict by computing the dif-
ference between the net values of the respective proper-
ties. In resistance to defendants' motion, plaintiff filed
the affidavits of two jurors who averred that the jury
followed the court's instruction.

While the verdict is very large, there was sufficient
evidence offered upon the trial to sustain the same. There
is nothing in the record from which it can be reasonably
inferred that the jury was actuated by either passion or
prejudice. The evidence disclosed beyond controversy that
the Chicago property was not worth to exceed more than
the value found by the jury, and there was a wide difference
between the net values of the two properties. The affidavits
of the two jurors, upon motion of counsel for plaintiff,

were stricken from the files. It has been repeatedly held by this court that affidavits of the character here offered cannot be considered, and the court properly so ruled. *Clark v. Van Vleck*, 135 Iowa 194; *Brown v. Drainage Dist.*, 163 Iowa 290; *State v. Rand*, 170 Iowa 25; *State v. Dudley*, 147 Iowa 645.

Other questions argued by counsel for appellant have been given careful consideration; but, as we do not deem them of controlling importance, we refrain from a discussion thereof.

We appreciate the size of the verdict and the importance of the questions argued, and have examined the whole record with care, and discover no error of the court upon which a reversal can be based. The weight and credibility of the evidence were for the jury, and the verdict finds, support in the evidence.

We therefore reach the conclusion that the judgment of the lower court must be, and it is,—*Affirmed*.

PRESTON, C. J., LADD and GAYNOR, JJ., concur.